Good morning, your honors. Andrew Baker with Bicentaire and Bodine for Petitioner-American Federation of Television and Radio Auditors. This appeal before the court presents three issues of concern on the board's decision below, an 8A5 duty to bargain issue, an 8A1 threat of retaliation issue, and then a withdrawal of recognition issue. But I'd like to focus on the first of those issues, which really presents the meaty issues here before the stated the bargaining obligation that attaches to employee wages, wages that are set through lawful direct dealing once the employer's right to direct deal has expired or disappeared or been rescinded. And in starting there, I'd like to emphasize something that wasn't perhaps brought to the forefront in any of the briefs, and that is when we're defining a term, whether it's mandatory or permissive for bargaining purposes, the starting point, of course, is the statute itself. And Section 8D of the National Labor Relations Act defines certain topics as mandatory. There are working conditions that have to be interpreted by the board as, well, what are the working conditions that are mandatory versus permissive? But the very first term that's used in Section 8D in defining the clear set of mandatory bargaining topics is wages. And here we're talking about employee wages and what bargaining obligation attaches to those wages in the particular circumstances of this case. Well, let me stop you right at the beginning. Because one of the difficulties I've had with this case is understanding how on the particular facts there is a case. Because it appears that the company did exactly what the union told it was supposed to do. It said, if you don't have one of these individually negotiated agreements in by a certain time, we don't recognize it. It doesn't count. And it's apparently uncontested that the individual in question, Mr. Morton, I believe, something like that, I'm blanking on his name, but it's Mr. Morton. Yes. Okay. Hadn't turned in, hadn't returned the signed agreement. So it wasn't turned in to the union. The union wasn't given notice of it by the deadline set by the union. And now the complaint against the company is that you did what the union told you to do, which is not recognize it if it wasn't turned in by a certain time. Bargain for wage. I believe in the facts of the case, Your Honor, that the case didn't turn on whether or not Morton... I know the case wasn't decided that way, but it reminds me of the scene from Animal House where the seniors tell the freshmen, and they used a different word, hey, you messed up. You trusted us. Well, I mean, in this case, the union says, if the contract's not turned into us by this time, it doesn't get recognized. It wasn't turned in. It wasn't recognized. And now the union's saying, aha, it wasn't recognized. You trusted us. Wait a minute. How can that be? Well, as I said, Your Honor, the case didn't turn on that fact pattern. And I believe – I have to admit, you're catching me flat-footed on that particular fact pattern because it hasn't... It seems to be a very obvious fact in dealing with the case, that Morton didn't get his contract, his special contract in on time. Therefore, he didn't have a special contract. The union had said there will be no more special contracts. So how can he get paid on a special contract level when there's no special contract that the union recognizes or that the union has told the employer the employer can recognize? I believe, Your Honor, that Morton's wages actually were set above scale before the point at which the union said... They were. By the special contract, it was never filed, so its existence was never recognized. I mean, the communication from the union made a point of saying if it's not turned in by a given time, it doesn't count. Now, if that wasn't there, it might be a different case. But I'm just utterly baffled as to – I confess I'm a little baffled of the course the case has taken, and I understand we do have to deal with the agency decision. But to me, this makes no sense, because the union says you can't recognize if it's not turned in, and it's not disputed that it wasn't turned in. So the union's position appears to have been the TV station can't pay a higher rate. They're committed to the bargained rate. Well, I would agree with you that the union's position is that when the right to direct deal is rescinded, that the employer no longer has the right to set above scale wages. Here, the case turned in, the board's analysis was not on whether or not Morton's wages had been set above scale before or after that permission had been rescinded. So the case that's before the court is actually the board's analysis of the case. And I understand there's a factual issue here that the court is focusing on, on whether or not by virtue of the union saying we're subjecting the overscale contracts to our receiving them by a date certain, in absent that, we retroactively rescind our approval. The board didn't grapple with that issue, so that factual issue which you're raising, if that's a turning point here, would I think require a remand to the board to address that issue. The broader legal issue here, which I think the case does present, because under the facts, the decision underlying the decision here, the board's decision, is that Morton had a preestablished above scale wage rate at the time when the employer reduced the wage, and whether or not there was a bargaining obligation attached to that. Well, if there had been a recognized contract, then as a matter of contract law, that above scale wage rate would have to be recognized. But in the absence of an enforceable contract, and in view of what the union has said, that you've got to get it in by a certain date, there's no enforceable contract to enforce. Well, the bargaining obligation here isn't flowing from contract, enforceable contract terms, but is flowing from the obligation under the Act to refrain from unilateral action before making changes in mandatory subjects. How can you call it unilateral if the union has written a letter saying it's null and void? Well, again, Your Honor, the whole case seems to have been hijacked to reach issues that I can't figure out how they're properly raised by this case. I'm looking at the union letter. Null and void. That's the union's position. I take it the union's position is no longer that that contract with a higher wage rate is null and void. Well, there's a distinction between the contract being null and void and the wage rate that the employer set through direct dealing. But the wage rate was set, it wasn't by direct dealing, that's the contract wage rate, the union negotiated contract wage rate. What was taken away was the individually negotiated wage rate. But there's no doubt that that original wage rate that's now being reinstalled was the union contract negotiated wage rate. So what's unilateral about this? Well, I think what you're saying is that the employer set Morton's wage rate pursuant to contractual term that permitted the employer to engage in individual negotiations for an above-scale rate. Yes. Is that the contractually negotiated wage rate at that point? Not according to the union. The union says it's null and void. And so the only thing left is the union negotiated rate, which is what they started to pay us. If Morton had gotten his contract signed and in, then it would have been an enforceable contract. And whether it's a – I think it's a pure question of contract law, it couldn't be reduced. But Morton didn't get it in. It was no longer a recognizable enforceable contract. And therefore, the collective – the new collective bargaining agreement is what regulates what's going to be paid. Well, here's the distinction I'm trying to draw, Your Honor, and that's between the enforceable either personal service contract or collective bargaining agreement. Once the personal service contract is in force and in place, it is an enforceable contract. And unfortunately for Morton's, his was never in force and in place. Granted. Granted. But there's a separate question on whether or not – there's a separate question that applies to the wages, the minimum scale wages that were set under the collective bargaining agreement. During this period – Weren't you the lateral? That's – that is part of the bargaining rate. I'm just trying to explain the circumstances here, Your Honor, and that is that the parties were in negotiations for a new collective bargaining agreement. The old collective bargaining agreement and all of its terms had expired so that the employer was free to unilaterally – to change the minimum scale in the union contract. But he didn't. He stuck – he paid the minimum scale. In order to change the minimum scale, the employer would simply first have to bargain to impasse with the union. But he didn't change it. I know. So that – but I'm – Unless you say – I mean, he didn't just pick a number out of the blue. He picked the number that's the old contract, which is presumably in place with everybody else who's – now the old contract's expired. It's not unusual for the old terms to stay in place. How is that unilateral? There's nothing unilateral about that. That's picking a rate that was negotiated. It's picking a rate that's negotiated, but it's – the employer is choosing to Oh? The employer's accepting the union's position that it doesn't have the authority to pay a higher rate. I think that the union's position was the contract wouldn't be recognized by the union, not necessarily that the wage rates that were set above – Oh, no. No, no, no. We will assume that any PSC not delivered to us by 10 a.m. tomorrow was not You don't have permission to go negotiate a higher rate with anybody anymore. I would read the nomenclature. And if – because the only thing that makes sense in that, if it means anything else, then it's a nothing threat. What the union has withdrawn from the company is the ability to pay a higher rate to talent they want to pay more to or need to pay more to in order to get. They're pulling back on that. The company can't go negotiate a higher rate with anybody. I agree with that. Okay. And if the contract's not in by 10 a.m. tomorrow, it's null and void in our view. So the position laid out explicitly by the union at the time was to tell the company to do precisely what it did, which is to not recognize a contract that wasn't in by that time. So what's the dispute here? Well, the dispute is over the wage that was in place at that time. The union said you can't pay anymore because this contract wasn't turned in at the time. And the dispute is over the board's analysis of how they got to the result. That analysis doesn't seem to have a whole lot to do with this case. Well, I think, then, that that means that the case has to be re-handed to the board. Can't we decide the case on the facts before us if the record supports the determination that we make? Well, if there's only one result possible from the facts, then, yes, I would say you can. I don't think that there's just one result possible from the facts here, because I believe that it entails here a question of interpretation of the contract, given the timing of the increase in his wage and the timing of the union's letter and the timing of the receipt of the signing of the personal service contract. All matters that weren't analyzed by the board in making its decision. When the collective bargaining agreement has terminated and there is a contract between the employee and the employer to pay a larger, pay the $17 an hour, what is there that requires the employer to terminate that relationship? The collective bargaining agreement has terminated. In that circumstance, where you have an enforceable individual contract, I would say that nothing requires termination of that individual contract. But we didn't have that here. What we had was an expired collective bargaining agreement and an above-scale employee with no enforceable personal service contract in place. And that's the issue that the board has presented here, what bargaining obligation attaches to that over-scale wage in that circumstance, where there's no enforceable individual contract. Why wasn't there an enforceable individual contract? Because the contract wasn't signed by the time that the union ---- Why wasn't there a contract between the employer and the individual? I believe because by the time of the actual execution of that contract that the union had explicitly rescinded the authority to direct deal. But the collective bargaining agreement has terminated. Correct. All right. Now, we've got an existing agreement between an employer and an employee for $17 an hour. Why can't that proceed? Well, if it's simply an oral agreement without enforceable individual contract terms, then ---- An oral agreement can be enforceable. And perhaps it could be enforced between the individual employee and the Right. The question here is with regard to the employer's obligations to the union, the bargaining obligation to the union. Which is? Which is an obligation to bargain about wage changes before making those changes. Right. So that leads into Judge Clifton's point, is that why are we here? That's what the union wanted. Well, the union was cutting off the employer's ability to create new above scale wage rates. No, unfortunately, the union was sitting on the branch that it cut off. I mean, I want to be clear about this, because I don't want to cut off a case that shouldn't be cut off. But it seems to me the only thing that you can make out of that part of the letter, which says if it's not turned in by a given time, and I realize this isn't what you anticipated, so if you want to, I have a copy of it. It's marked GC 22, although I don't know what that stands for. I guess it's record page two, exhibit E. Anyway, the only point of that paragraph has to be this is the cutoff point. And even if you have an agreement sort of tacitly in place by somebody, if it's not turned in to us by this time, we're withdrawing your right to enter into it. And so the company at that point can't recognize according to the obligation because the union has the right to withdraw the direct deal right. At that point, the action taken by the union means according to the understanding of the union, the company can't enter a new agreement. And because this hasn't been turned in, the union's position is if it hasn't been turned in, it's a new agreement. And so I come back to the position, it seems to me the company's responding exactly as the union has instructed it to do. If that's the case, what's the case of controversy? How are we here? I mean, I understand that the argument taken to the board and the board's decision go on larger issues. But for the life of me, I can't figure out how this case raises those issues if there, in fact, was no disagreement between the union and the company at the time the action was taken. And the company did try to get Morton to get the contract in. It's not that they were holding their cards up their sleeve. They said, you know, you've got to get this in if it's going to be valid. If I'm reading my clock correctly. Oh, we've taken you astray. I was hoping to reserve a little bit for rebuttal. Okay. Then you can, I mean, there's a whole set of issues you want to raise, but it seems to me, and I want to hear from the other side on this, and I'll give you a chance to come back, because we have sent you in a direction that you hadn't anticipated. And if we do have reason to decide those other issues, we're going to want to hear from you. But I've got to say, I really have trouble figuring out what the case is here under the circumstances. And so maybe we should hear from, well, the board and the employer in whatever sequence they choose. But the first question they're going to get hit with is exactly the question  Thank you. So maybe you can tell us why we're here. But first you get to introduce yourself. I will. Good morning, Your Honors. I'm Greg Lauro. I'm counsel for the National Labor Relations Board. And with me at counsel's table today is Ted Scott, counsel for the intervener. Your Honors hit on an important point, which is, first of all, the facts here are undisputed. The company did what it was allowed to do when it negotiated this above-scale rate. It did what the union told it to do when it stopped paying that above-scale rate, because the union said Mr. Morton's PSC would be null and void if not signed by the deadline the union had set. And in response to that, all the employer did was reduce his wage to the contractual scale, which, as you noted, is the wage the employer and the union agreed on through their collective bargaining. And it is hard to see, based on those admitted facts, how there is a This simply isn't a case where an employer unilaterally changes or departs from the wage that resulted from collective bargaining. But I should point out the union of the right to send a letter saying if you don't get these agreements in by a certain date, they're all over. Well, a couple of things. One is obviously the legality of the union's conduct per se wasn't at issue here. But to answer Your Honor's question, one undisputed principle here is that direct dealing was a permissive subject of bargaining and that it settled that parties may unilaterally terminate that permissive subject. The other issue that's been raised is had this personal service contract been signed, it would be effective as an individual contract that would be subject to the traditional law regarding individual contracts. Why is that? Why does it have to be signed by a certain date and turned in? Well, I think the short answer is that was the party's understanding. It was certainly what the union said in its letter. Why didn't I hear you? Oh, I'm sorry. For one thing, that's what the union said when it withdrew direct dealing authority. It said null and void unless signed by the state, and everyone agrees it was not signed by the state. Yeah. Why does the union have that alternative? Well, like I said, Your Honor, if the issue is can the union unilaterally rescind direct dealing, the answer is yes because the parties may unilaterally rescind or modify permissive terms. If the question is how can they take away the wage being paid to Mr. Morton, part of that answer is Mr. Morton had not signed his PSC, his personal service contract, so he did not have an effective individual contract. That would be the basis for the union's conduct here. In effect, in contract law terms, the company had made an offer, but the offer was conditioned on the union giving it permission to do the direct deal separate from the bargained rate. And once the union withdrew that permission, the offer expired because the company no longer had the authority to make the offer separate from the bargained rate. I think that's reasonable, Your Honor. And in addition, had the employer gone ahead and continued paying his rate anyway or accepted the belatedly signed PSC, it would have arguably been engaging in prohibited direct dealing at that point without permission to do so. It would have what been? I didn't hear any of the words. I don't get it. It would have effectively been what? I'll lean in a little bit if that helps. What I was saying, Your Honor, is that first, I think although offer and not directly presented here, I think the point that what happened here was an offer conditioned on the union's permission is a reasonable view. The company never intended to be paying above-scale wages against the unions removing that permission. But I was also pointing out that in this particular case, the expectation was also that there would be a signed PSC, and the union removed that possibility by saying that every PSC would be null and void unless signed by this deadline. And everyone agrees, Mr. Morton did not sign his PSC by the union's deadline. But I also want to point out that. What gives the union the right to set a deadline? Oh, I see, Your Honor. Part of what I was saying when I was swallowing my words was that when it's a permissive subject of bargaining like the right to deal directly with employees, a party may unilaterally rescind it. So following from that, the union would be in their rights to say no more direct dealing. As to this particular gentleman's above-scale wage, he did not have a signed contract, so it arguably wouldn't be a fulfilled contract anyway. You know, I'm not 100 percent sure the union was on solid ground in saying unless we have written contract in hand, that's it. But having taken that position, I think the problem I have now is that even if that proposition is debatable, the possibility of Morton having signed and not turned it in, for example, but even if the proposition is debatable, it seems to me the union, having explicitly taken that position, can't come in now and say, well, we overreached and so disregard that. I think the facts are undisputed with regard to what position was taken and that the company, in effect, is ceded to that because it didn't have a signed contract turned into the union by that time, which is why I come back to the question of so what kind of case is there here? And Mr. Morton was a member of the union. Yes. Therefore, the union could represent Mr. Morton vis-à-vis the employer in the wage negotiations. They had that option under the contract, yes. But I hope I'm answering Your Honor's question about how do these You are, and yet the board's ruling is based on broader considerations. And I guess I'm a little troubled or puzzled as to what we do now. I mean, I think there is a case or controversy problem here, and yet as a basic proposition, we don't we're stuck with reasons given by the administrative agency. We don't make up a decision that the agency didn't make up. So I'm sitting here trying to figure out where do you think we're supposed to go next? Well, Your Honor, I would point out the facts you're relying on, which I think everyone agrees, these being the facts, there's no basis for an 8A5 violation here and the complaint should be dismissed, but these facts are on the record and they are in the board's decision. And if you turn to I believe it's page two, the heading is the reductions of Morton's wage. One of the first sentences lays out just what we've been talking about, the union's letter saying we will assume if the PSC is not signed and delivered to us by this time, it will be null and void. And that's on the record and it's discussed. The other related facts are discussed throughout the board's decision also in its 8A3 analysis, which is a charge that's not at issue there, but there are the board fines on the record. Not only was this PSC null and void by the union's own declaration, but also the record showed that the company had a practice of not paying above scale absent a signed PSC. So these facts are on the record, explicitly referenced in the board's opinion in the section entitled reduction of Morton's wages, there for the court to consider as a basis for affirming the board's order. So what was the violation the board is after? The violation that the board is dismissing? Well, the charge was that the company acted unlawfully, violated section 85 of the act by reducing Mr. Morton's wage to scale. And the board dismissed that reasonably for the reasons we've been discussing. So the employer acted unlawfully. Allegedly. By doing what the union said? That's what the facts show. When you put the charge and the undisputed facts together, it's like claiming the employer acted unlawfully and even unilaterally by doing just what the union said. I think it is fair to say it's hard to grasp how that is even a unilateral change since the company was put in the position of complying with the union's directive. But the point is there's certainly sufficient evidence on the record and in the section 85 issue on which to affirm the board's dismissal of that portion of the complaint. Well, tell us what that is. We've got an employer doing what the union said. And the board says that they, by doing that, have violated the union's directive. Oh, I apologize. I think we got off track here. As we say in our brief and as I hope I was saying all along, what I'm asking the board to affirm is the board's dismissal of that aspect of the complaint. The board dismissed it. And I think by now it's for pretty obvious reasons. Without putting too fine a point on it, there has to be a unilateral change. Arguably there was not here when the employer is complying with the union's directive. And it has to be unlawful, which isn't clear here. Again, the employer is just following the union's directive. And what's more, in so doing, they're paying the collectively bargained wage that's And on that basis alone, there appears to be no basis for a Section 8A-5 violation, meaning the board properly dismissed that violation. How about the 8A-3 and 8A-1? Well, the 8A-3 as to the wage reduction is not before the court. The board dismissed it for reasons clearly stated in its decision. And the union is not challenging that finding, as I recall, so it's not before the court. The 8A-1, there's a couple, I mean, the 8A-1 that is before the court regards the letter the employer sent. But as the board found, this wage reduction is lawful. The company lawfully referenced that lawful wage reduction, so there's no improper threat there. And the employer accurately conveys what had happened and could happen in the give and take of collective bargaining. And there is case law saying that accurately apprising the employees of that fact is not an unlawful threat. It informs rather than threatens. And so based on everything we've discussed, the board is correct as to all of the challenged issues. The 8A-5 should be dismissed. It follows that the 8A-1 regarding the letter should be dismissed. And though we haven't discussed it specifically, it also follows that the charge regarding the withdrawal of recognition should be dismissed too. Because absent the unfair labor practices we've just discussed should be dismissed, there's nothing to taint the decertification petition the employees signed to remove their union. And in those circumstances, the company may lawfully withdraw recognition from the union. And so unless the court has further questions, I thank it for its time. Okay. We'll find out what the employer's take on this situation is, and then we'll come back. Thank you. May it please the Court, Ted Scott for the intervener, KFMB. The matter has been fully discussed. Our time is up, and I appreciate that. I really don't have too much to add to what Mr. Loro said. I would say that the Board did, in fact, address these issues. There's no need for a remand. As Mr. Loro pointed out, the Board specifically referenced the letter that the union sent. The employer interpreted that letter as indicating that anyone who was not subject to a current signed PSC should only be paid the union scale in the collective bargaining agreement. In our brief at page 11, we discuss the back and forth between the company representative and Mr. Morton when Mr. Morton said, hey, here, I'll go get it. It's at home right now. I'll bring it back signed, and then you can continue to pay me at that rate. And the station, based on what the union had said, said, sorry, it's too late. We can't do that. The Board, in its decision, also repeatedly references the fact that the reduction was only to the union scale, which is what the union had negotiated. So the union's right to negotiate and represent the bargaining unit with respect to wage rates was recognized in the Board's decision and is protected by the Board's decision. Thank you. Mr. Baker? Your Honors, I think I've got the fact pattern here now, so I can explain to you why the case doesn't turn on the union's letter of July 31. And the key fact here is that Mr. Morton's above-scale wage rate was set in March of 2001. It was set in March at the above-scale rate at a time when the collective bargaining agreement was still under an extension. The collective bargaining agreement contained the union's waiver, or stated otherwise, authorization of the employer to set above-scale wages. Whether or not Mr. Morton had a contract, individual contract, for that wage rate is a separate question of whether or not he had an above-scale wage. The employer was authorized to set wages above scale with or without a personal service contract. The collective bargaining agreement didn't require a personal service contract to be in place. So you had Mr. Morton's wages already above scale at a time when the above, the setting of that rate was consistent with the collective bargaining agreement and the employer's bargaining obligation, which was to the union, which was none on that. The union in July 31 sends a letter that has two paragraphs in it. Paragraph 1, and this is General Counsel Exhibit 22, says that the right to direct deal expires August 1st. I read that paragraph as saying no more new individual negotiations after August 1st. Paragraph 2 addresses personal service contracts, which I read as a separate matter. If you don't have a personal service contract in place unto us by this deadline, we, the union, are going to treat it as null and void. And I think that can be judged. What does that mean? I mean, the only thing it can mean is that we won't accept it for purpose, because all the union has the right to do is withdraw the direct deal right. Well, that means we're withdrawing the right to directly deal with that person. If we don't have a signed contract in time, you can't directly deal with that person. No more direct dealing. I agree, Your Honor. Just no more, because the only point in saying you've got to have the contract in, it can't be to say henceforth you can't, because the point of setting a deadline, saying we won't recognize it if it's not in, that has to be backward looking. Here's what I read the intent of that paragraph to be. We won't honor personal service contracts that aren't in to us by that point, honoring them being, and it goes back to Judge Hugg's question, like, well, does the union have the authority to honor or not honor those contracts? But I read it as the intent being stated that the union, for those contracts that are in place by that time, will say, fine, those can go for the life of the personal service contract. We won't challenge those. Then why would you include the paragraph that says, therefore, is null and void? If the contract is submitted after the date, it would be considered null and void. The union won't recognize that as an enforceable contract. And, again, does the union have the authority to recognize that or not? So you're interpreting this paragraph to speak to something the union probably doesn't have the authority to do and not to speak to the one thing we know the union does have authority to do, which is whether they're going to permit the direct deal, which is addressed in the first paragraph. And the second paragraph was put in there for what reason? To acknowledge that. Comment on something the union doesn't have the authority to? Well, to college, as counsel for the NLRB stated, that there was an arrangement between the parties. Whether that arrangement was consistent with the 8D of the Act or not, the parties' personal service contracts here and throughout the entertainment industry are very common. There's a question, I think, that's raised here. Is the union going to contest one of its own members' personal service contracts and say that it's not binding? Because it locks down the wages for the member for the life of the contract, as well as other terms and conditions, and takes those terms out of the collective bargaining sphere for the union. See, look at that paragraph. The first sentence says, by 10 a.m. tomorrow, August 1st, a copy of any PSC that has been signed and which has not already been given to us. So they're talking about agreements already in place. And the next sentence says, If it's not signed, we don't recognize it. It doesn't count for anything. And the only thing the union's recognition matters for is for the direct deal part, to permit a higher wage rate to be set. So it seems to me this has to say what we think it says, which is that the union pulled the plug on the ability to pay Mr. Morton a higher rate. If that's the case, we've got no reason to be here. And I don't necessarily agree that that is the case. And it has to the extent it talks about, the union is talking here about not setting wages, I read it as not setting wages after we've withdrawn the rescission. I understand that the second paragraph has that we're going to invoke our right to somehow go retroactively here. But I think the facts here are that there was an above-scale wage rate set here that was separate and apart from any personal service contract. And I'd like to briefly rebut a suggestion that the board actually has addressed this question in dealing with the 8A5 issue. And if you look at the board's analysis on the 8A5, as opposed to the 8A3 issue raised in this fact pattern, you'll see that the board simply says the topic, this topic is permissive. Because it's permissive, the employer is free to make unilateral changes in it. We thank all three counsel for their arguments. The case just argued is submitted. And we'll take a short recess before returning for the last two arguments on the calendar.
judges: Hug, Clifton, Roth